NIEVA, DEMANDANTE Y APELANTE, *v.* GUÁNICA CENTRALE,
DEMANDADA Y APELADA.

APELACIÓN procedente de la Corte de Distrito de Ponce en
pleito sobre cumplimiento de contrato.

No. 1940.—Resuelto en junio 27, 1919.

SERVIDUMBRE DE VÍA Y CARGADERO—CONTRATO.—En el presente caso el deman-
dante, que era subarrendatario de una finca por cierto término, con opción
a prórroga, constituyó una servidumbre sobre esa finca a favor de la de-
mandada por el término que duraran el arrendamiento y subarrendamiento.
en consideración a lo cual la demandada hacía al demandante ciertas con-
cesiones; terminados los contratos de arrendamiento, y subarrendamiento con
sus prórrogas, fueron ambos extendidos mediante escritura por cinco años más,
y entonces la demandada, que en el entretanto había adquirido por título deri-
vado del dueño de la finca, un nuevo derecho de servidumbre, aunque siguió
haciendo uso de la servidumbre, se negó a continuar dispensando al deman-
dante las concesiones estipuladas en el contrato de servidumbre entre ambos.
*Se resolvió:* que la extensión del arrendamiento y del subarrendamiento me-
diante escritura, no puede considerarse como una continuación del contrato ori-
ginal, sino como un nuevo contrato que las partes en este pleito no pudieron
tener presente al otorgar el contrato de servidumbre y por tanto que la deman-
dante no tiene derecho a exigir el cumplimiento del primitivo contrato de
servidumbre.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José Sabater.*

Abogado de la apelada: *Sr. José Tous Soto.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del
tribunal.

Se trata del cumplimiento de cierta obligación de la de-
mandada Guánica Centrale a favor del demandante Pedro
Nieva Mangual en compensación de cierta servidumbre ce-
dida por el demandante a la demandada sobre terrenos que
el demandante estaba poseyendo en concepto de arrenda-
tario o subarrendatario.

La demanda fué interpuesta ante la Corte de Distrito de
Ponce en 9 de enero de 1917 y declarada sin lugar por sen-
tencia de 31 de julio de 1918, contra cuya sentencia inter-
puso el demandante recurso de apelación para ante esta
Corte Suprema.

El contrato celebrado entre el demandante y la deman-

dada fué consignado en documento privado transcrito en la demanda, y su texto literal es el siguiente:

"Añasco, Puerto Rico, julio 19 de 1912.—Conste por este documento que don Pedro Nieva cede y da a Guánica Centrale una servidumbre en cantidad suficiente de veinticinco (25) pies de ancho y en la línea trazada ahora por Guánica Centrale, por todo el tiempo que dure el contrato de arriendo o subarriendo que el expresado Sr. Nieva tiene en los terrenos de la propiedad de Enrique Green, de Mayagüez, o que sean de otras personas, para Guánica Centrale construir y mantener un ferrocarril de un metro en los dichos terrenos que el repetido Sr. Nieva posee, así como también da y cede a la misma corporación terrenos suficientes para construir y mantener un desvío de carga en la referida propiedad.  En cambio de este privilegio que concede el Sr. Nieva a Guánica Centrale de construir y mantener la línea de ferrocarril y el desvío de carga a que se hace mención anteriormente, Guánica Centrale conviene en permitir al expresado Sr. Nieva cargar las cañas que tiene en la dicha propiedad, en la estación de carga durante todo el tiempo que dure el contrato de arriendo o subarriendo que al presente tiene el Sr. Nieva sobre los terrenos expresados en este contrato.—Guánica Centrale, por (Firmado) A. J. Greif.—(Firmado) P. Nieva.  Testigos (Firmado) J. M. Palmer, Jr.—(Firmado) E. R. Rossy."

Los terrenos a que se refiere el documento transcrito son dos parcelas de tierra que totalizan una extensión de 100 cuerdas radicadas en el barrio de Marías del municipio de Añasco, cuyas parcelas se describen en la demanda.

Al celebrarse el contrato dichos terrenos estaban arrendados a la corporación Mayagüez Sugar Company, Inc., según escritura de 24 de agosto de 1909 por don Emilio D. Huete como apoderado de doña Agustina Christy Mangual, que entonces era dueña de ellos, por un término de tres años y medio, que vencieron en 31 de marzo de 1913, con opción por parte de la corporación arrendataria a tres años más de prórroga a contar desde la fecha expresada.

Y en fecha posterior, o sea, por escritura pública de 4 de septiembre del mismo año, la corporación arrendataria Mayagüez Sugar Company, subarrendó al demandante los propios terrenos en las mismas condiciones y por los mis-

mos términos de arrendamiento y opción a prórroga a que se refiere la escritura ya mencionada de 24 de agosto de 1909.

Por otra escritura pública de 4 de agosto de 1915, don Enrique Green, en concepto de dueño de los terrenos de que se trata, los que había adquirido de doña Agustina Christy y Mangual por escritura de 27 de diciembre de 1911, reconociendo que la Mayagüez Sugar Company había hecho uso del derecho de prórroga de arrendamiento que se le había concedido por la escritura de 24 de agosto de 1909, concedió a la Mayagüez Sugar Company una nueva prórroga de arrendamiento por un período de cinco años que habían de contarse desde el 31 de marzo de 1916, fecha del término de la anterior prórroga, hasta el 31 de marzo de 1921.

Por otra escritura posterior, de 5 de enero de 1917, la Mayagüez Sugar Company cedió en subarrendamiento al demandante Pedro Nieva Mangual los mismos terrenos que le habían sido arrendados por la escritura de 4 de agosto de 1915 en las mismas condiciones contenidas en dicha escritura, o sea, por un período de cinco años que comenzaron a contarse desde el 31 de marzo de 1916 en que expiró el contrato de subarrendamiento existente entre la Mayagüez Sugar Company y el demandante. Nieva sobre los mismos terrenos y que vencerían el 31 de marzo de 1921, fijándose por modo expreso en esa escritura de 5 de enero de 1917 las condiciones del subarrendamiento.

Por otra escritura anterior de 14 de diciembre de 1912, el propio Sr. Green había constituído a favor de la corporación "Bernal Estates" y de sus causahabientes o sucesores, el derecho de establecer y conservar por un término que vencería el día 1º. de agosto del año 1930, una vía fija de un metro de anchura y 825 pies aproximadamente de longitud, pudiendo extenderse la faja de terreno en que se coloque hasta una anchura de 25 pies, cuya línea atravesaría entre otros terrenos las dos parcelas de la propiedad de Green.

La corporación demandada trazó la línea y construyó el

ferrocarril sobre los terrenos subarrendados al demandante con sujeción al contrato de julio 19 de 1912 y el desvío de carga a que el mismo se refiere, traficando, cargando cañas y cruzando con dicho ferrocarril por dichos terrenos, habiendo el demandante a su vez cargado las cañas que tenía sembradas en los mismos terrenos durante las zafras de 1912, 1913, 1914, 1915 a 1916, pero se ha negado desde la zafra de 1916 a 1917 y sigue negándose a que el demandante se sirva de la estación de carga para el transporte de sus cañas.

Alega el demandante que el derecho a cargar sus cañas en la estación de carga del demandado se deriva del contrato celebrado entre ambas partes en documento privado de julio 19, 1912, y que ese derecho le había sido reconocido por todo el tiempo que durara el contrato de arriendo o subarriendo de las dos parcelas de terreno de la propiedad de don Enrique Green cuyo término era de tres años y medio con una prórroga de tres años más de que hizo uso y que venció en 31 de marzo de 1916 habiéndosele otorgado después una nueva prórroga por un período de cinco años que había de contarse desde el 31 de marzo de 1916 para concluir en 31 de marzo de 1921.

La demandada por el contrario sostiene que el derecho invocado por el demandante quedó extinguido en 31 de marzo de 1916 en que expiró con su prórroga el contrato de arrendamiento a que se refiere el documento privado de julio 19, 1912, derivándose el derecho de servidumbre de que disfruta actualmente no de dicho documento privado, sino de la escritura pública de 14 de diciembre de 1912 en que don Enrique Green, dueño de los terrenos de que es arrendatario el demandante, constituyó la servidumbre para vía férrea a favor de la "Bernal Estates" por un término que había de vencer en 1°. de agosto de 1930, cuya corporación a su vez cedió a la demandada el derecho al uso de la vía desde 1°. de abril de 1916, concesión vigente en la fecha de la demanda.

Como se ve, la única cuestión legal a discutir y resolver

en el presente recurso, es la de si el derecho reconocido al demandante de cargar sus cañas en la estación de carga de la demandada se extinguió al terminar en 31 de marzo de 1916 la prórroga del contrato de arrendamiento celebrado por escritura pública de 24 de agosto de 1909 o si ese derecho quedó prorrogado hasta el 31 de marzo de 1921 a virtud del arrendamiento sobre los mismos terrenos a la Mayagüez Sugar Company por cinco años más en virtud de la escritura pública de 4 de agosto de 1915.

Los derechos mutuos que se reconocieron Pedro Nieva Mangual y la Guánica Centrale por el documento privado de 19 de julio de 1912 habían de durar el tiempo que durara el arriendo o subarriendo que Nieva tenía entonces en los terrenos de la propiedad de Enrique Green o de otras personas. Ese arrendamiento o subarrendamiento de Nieva con relación a los terrenos de que se trata era el consignado en la escritura pública de 4 de septiembre de 1909 en virtud de la cual la Mayagüez Sugar Company subarrendó a Nieva los terrenos que a ella le habían sido arrendados por término de tres años y medio con una prórroga de tres años que había de vencer en 31 de marzo de 1916. Nieva era subarrendatario de Green y, por tanto, su derecho de subarrendamiento expiraba al terminar el derecho de arrendamiento de la subarrendadora la Mayagüez Sugar Company, o sea, en la fecha indicada de 31 de marzo de 1916.

Ciertamente que por escritura de 4 de agosto de 1915 Enrique Green concedió a la Mayagüez Sugar Company una nueva prórroga del contrato de arrendamiento primitivo por un período de cinco años que habían de contarse desde el 31 de marzo de 1916, y que a su vez la Mayagüez Sugar Company, por otra escritura de 5 de enero de 1917, subarrendó a Nieva los terrenos por igual tiempo; pero ese nuevo subarrendamiento celebrado entre la Mayagüez Sugar Company y Pedro Nieva no podía ejercer influencia alguna en un contrato verificado mediante documento privado en 19 de julio

de 1912 entre distintas partes, o sea, entre Pedro Nieva y la Guánica Centrale.

El artículo 1250 del Código Civil establece la siguiente regla de interpretación de contratos:

"Art. 1250.—Cualquiera que sea la generalidad de los términos de un contrato no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquellos sobre que los interesados se propusieron contratar."

Bajo la anterior regla no es posible sostener que Guánica Centrale se obligase con Nieva no sólo durante el término del subarrendamiento de los terrenos que con su prórroga estipulada venció en 31 de marzo de 1916 sino también durante cualquier otro término que arrendador y arrendatario y subarrendador y subarrendatario tuvieran a bien convenir. No podía en 19 de julio de 1912 prever la contratante Guánica Centrale que Green había de prorrogar en 4 de agosto de 1915 por cinco años más el contrato de arrendamiento que en 24 de agosto de 1909 celebró doña Agustina Cristy Mangual con la corporación Mayagüez Sugar Company, de cuyos terrenos había venido a ser dueño Green por escritura de 27 de diciembre de 1911 y tampoco podía prever la parte demandada que la corporación Mayagüez Sugar Company subarrendara esos mismos terrenos a Nieva por igual término de cinco años a vencer en 31 de enero de 1921, por escritura de 5 de enero de 1917.

Es verdad que la Guánica Centrale continuó usando la vía después de la fecha de 31 de marzo de 1916 pero no lo hizo en virtud del contrato privado de 19 de julio de 1912 cuyo término ya había vencido sino en virtud de permiso que le fué concedido por la "Bernal Estates" a favor de la cual había constituído Green un derecho de servidumbre de vía por los mismos terrenos, por escritura de 14 de diciembre de 1912.

El hecho de que Nieva como subarrendatario de la Mayagüez Sugar Company hubiera dado en 19 de julio de 1912

a la Guánica Centrale un derecho de servidumbre para vía sobre los terrenos que él poseía en subarrendamiento por un término que vencía en 31 de marzo de 1916, no impedía que Green como dueño de esos mismos terrenos concediera un derecho similar a la "Bernal Estates" por escritura de 14 de diciembre de 1912. A lo sumo podría resultar incompatibilidad de derechos entre la Guánica Centrale y la "Bernal Estates" hasta el 31 de marzo de 1916 en que expiró la servidumbre reconocida a la Guánica Centrale por Nieva, pero hasta esa fecha no se originó conflicto alguno y después, o sea a partir del 31 de marzo de 1916, la "Bernal Estates" cedió a la Guánica Centrale el uso de la servidumbre. No importa que la escritura de constitución de servidumbres no estuviera inscrita en el registro de la propiedad, pues como tampoco estaba inscrito en el registro el contrato de arrendamiento a la Mayagüez Sugar Company y de subarrendamiento por ésta a Pedro Nieva, no puede invocar éste el derecho de tercero para quitar eficacia legal a la servidumbre constituída a favor de la "Bernal Estates."

El artículo 603 preceptivo de que "cuando pertenezca a una persona el dominio directo de una finca y a otra el dominio útil no podrá establecerse sobre ella servidumbre voluntaria perpetua sin el consentimiento de ambos dueños", cuyo artículo invoca la parte apelante contra la servidumbre constituída a favor de la "Bernal Estates;" no es de aplicación al presente caso en que no se trata de dominio directo de una finca a favor de una persona y de dominio útil a favor de otra sino simplemente de derecho personal de arrendamiento o subarrendamiento, no siendo perpetua sino temporal la servidumbre de que se trata. Además, cuando Green arrendó a la Mayagüez Sugar Company en 1915 ya la servidumbre estaba constituída a favor de la "Bernal Estates" desde 14 de diciembre de 1912.

Opinamos, pues, que las estipulaciones acordadas por el documento privado de julio 19, 1912, sólo podían tener efecto

hasta el 31 de marzo de 1916 en que terminó el contrato de arrendamiento o subarrendamiento que Nieva tenía sobre dichos terrenos, y que si bien la Mayagüez Sugar Company por escritura de 5 de enero de 1917 subarrendó a Nieva los terrenos que le habían sido arrendados por escritura pública de 4 de agosto de 1915 ese nuevo contrato de arrendamiento no puede considerarse como una continuación del primitivo contrato de subarrendamiento a la cual pueda acojerse el demandante para sostener que el contrato privado de julio 19, 1912, había de terminar en 31 de marzo de 1921 y no en 31 de marzo de 1916.

En el juicio fueron tomadas varias excepciones por la parte apelante, de las cuales nos ocupamos a continuación.

Al celebrarse el juicio se permitió cierta enmienda a la contestación de la parte demandada en el sentido de que "solamente había utilizado la vía hasta junio 30, 1917 y no después de esa fecha" cuando antes había admitido que continuó utilizando la vía por concesión de la Bernal Estates" que tenía derecho de servidumbre constituído por Green. Esa enmienda no causó perjuicio al demandante pues la corte al admitirla concedió expresamente al demandante cualquier oportunidad para presentar cualquiera evidencia que tuviera en contra de dicha alegación, a parte de que aun probando el demandante que la Guánica Centrale usara la servidumbre después de la fecha indicada esa circunstancia en nada cambiaría los términos del problema jurídico planteado.

La parte demandante presentó una moción eliminatoria de alegaciones de la contestación de la parte demandada en que negaba alegaciones de la parte demandante por falta de información o creencia suficiente para afirmar o negar. La negativa en esa forma está autorizada por el artículo 110, No. 2°., del Código de Enjuiciamiento Civil y la moción eliminatoria estuvo, por tanto, bien denegada. También solicitó la parte demandante la eliminación de la alegación de la parte demandada relativa a que estaba usando la servi-

dumbre de vía por concesión de Green a la "Bernal Estate" y por permiso de ésta a la "Guánica Centrale." Esa alegación era una buena defensa y cabía dentro del precepto del artículo 114 del Código de Enjuiciamiento Civil que permite al demandado deducir en su contestación todas las alegaciones en contrario y reconvenciones que tuviere. Hay otras excepciones tomadas por el demandante contra la admisión de algunas de las pruebas de la parte demandada, pero juzgamos innecesario someterlas a nuestro examen porque algunas de las pruebas se relacionan con alegaciones de la demandada que no han sido eliminadas, siendo por tanto pertinentes, y otras no han causado perjuicio alguno a la parte demandante.

Es de confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.